# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

D.M.,[1]

    Plaintiff,

v.                                                                  Case No. 20-1246-JWB

ANDREW M. SAUL,
*Commissioner of Social Security Administration,*

    Defendant.

## MEMORANDUM AND ORDER

Plaintiff filed this action for review of a final decision of the Commissioner of Social Security denying Plaintiff's application for disability insurance benefits and supplemental security income. The matter is fully briefed by the parties and the court is prepared to rule. (Docs. 15, 17, 18.) For the reasons stated herein, the decision of the Commissioner is REVERSED and REMANDED.

**I. Standard of Review**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." The Commissioner's decision will be reviewed to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such

---

[1] Plaintiff's initials are used to protect privacy interests.

evidence as a reasonable mind might accept as adequate to support the conclusion. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014). Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. *Graham v. Sullivan*, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. *Glenn*, 21 F.3d at 984.

The Commissioner has established a five-step sequential evaluation process to determine disability. *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010). If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that she is not working at a "substantial gainful activity." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). At step two, the agency will find non-disability unless the claimant shows that she has a severe impairment. At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. *Id*. at 751. If the claimant's impairment does not meet or equal a listed impairment, the agency determines the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 416.920(a)(4)(iv), 20 C.F.R. § 416.945. The RFC represents the most that the claimant can still do in work setting despite her impairments. *See Cooksey v. Colvin,* 605 F. App'x 735, 738 (10th Cir. 2015). The RFC assessment is used to evaluate the claim at both step four and step five. §

416.920(e), (f), (g). At step four, the agency must determine whether the claimant can perform previous work. If a claimant shows that she cannot perform the previous work, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. *Barnhart v. Thomas*, 540 U.S. 20, 25 (2003).

The claimant bears the burden of proof through step four of the analysis. *Blea v. Barnhart*, 466 F.3d 903, 907 (10th Cir. 2006). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. *Id.*; *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. *Thompson*, 987 F.2d at 1487 (citations omitted).

**II. Background and Procedural History**

Plaintiff filed an application for disability insurance benefits and supplemental income alleging a disability beginning March 15, 2016, when she was 38 years old. Her application was denied administratively both initially and upon reconsideration. Plaintiff thereafter requested an evidentiary hearing before an Administrative Law Judge (ALJ). On June 27, 2019, ALJ Michael D. Burrichter held an evidentiary hearing in Topeka, Kansas. Plaintiff appeared and testified at the hearing, as did impartial vocational expert James Pavisian. (Tr. at 10.[2]) The ALJ issued a written opinion denying the application on August 28, 2019. (*Id.* at 7.)

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date of March 15, 2016. (*Id.* at 12.) At step two, the ALJ found Plaintiff has the following severe impairments: degenerative disc disease of the lumbar spine with disc bulging,

---

[2] Citations to "Tr." refer to Bates page numbers in the administrative transcript. (Doc. 14.)

fibromyalgia, diabetes mellitus, and obesity. (*Id.*) At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in the regulations. (*Id.* at 15.)

The ALJ next determined that Plaintiff has the RFC to perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a), in that she can lift and carry up to ten pounds occasionally and lift or carry less than ten pounds frequently; can stand and/or walk for two hours out of an eight-hour workday, and sit for six hours of an eight-hour workday; she "should be allowed to sit, stand or walk alternatively, provided [she] is off task less than 10% of the work period"; she should never climb ladders, ropes and scaffolds; can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; can frequently reach overhead bilaterally; she should never work at unprotected heights or with moving mechanical parts; and can occasionally work in vibration. (*Id.* at 16.)

At step four, the ALJ found Plaintiff was unable to perform her past relevant work as a baker's helper. (*Id.* at 21.) At step five, after considering Plaintiff's age, work experience, and RFC, the ALJ concluded there were jobs in significant numbers in the national economy that Plaintiff could perform, including the following sedentary unskilled positions identified in the Dictionary of Occupational Titles (DOT): credit checker (DOT #237.367-014, 25,000 positions nationally); document preparer (DOT # 249.587-018, 30,000 positions nationally), and circuit board assembler (DOT # 726.684-110, 68,000 positions nationally). (*Id.* at 22.)

**III. Analysis**

Plaintiff contends the RFC was not supported by substantial evidence for two reasons. First, with respect to Plaintiff's need to alternate between sitting, standing, and walking, Plaintiff argues the RFC was deficient because it failed to specify the frequency of the needed position

changes. (Doc. 15 at 8.) Second, Plaintiff argues the ALJ failed to provide reasons supported by substantial evidence for finding a consultative examiner's opinions unpersuasive. (*Id.*)

According to the ALJ's findings, Plaintiff has severe impairments including degenerative disc disease of the lumbar spine with disc bulging, fibromyalgia, diabetes mellitus, and obesity. (Tr. at 12.) She is five feet five inches tall and weighs 370 pounds. (*Id.* at 15.) As the ALJ noted, Plaintiff alleged that she could not work in part because of pain and an inability to sit, stand, or walk for long periods. (*Id.* at 16-17.) At the hearing, Plaintiff testified that sitting too long caused sharp pain in her back and that she could sit in a chair for about ten minutes before she had to get up and move around. (*Id.* at 50.) An examination by consultative examiner Carly Ernst, D.O., diagnosed low back pain with decreased range of motion and bilateral knee pain, as well as morbid obesity and hypertension. (*Id.* at 374.) Ernst's opinions included that Plaintiff "should be able to sit, walk, and/or stand for a half workday with breaks as needed to rest" and "should not lift/carry objects greater than 20 pounds." (*Id.*) The ALJ found Ernst's opinion partially persuasive, stating:

> The opinion that the claimant cannot lift over 20 pounds is consistent with sedentary limits given more recently, as well as the opinion that the claimant can sit/stand/walk for half workday, but the opinion on only being able to sit for half workday is not consistent with relatively mild objective imaging. However, stand/walk for half workday is consistent with sedentary limits. I find no support in the record for needing breaks as needed or being off task due to relatively mild objective imaging, and her testimony that she can lift 10 pounds. She also does not require the use of an assistive device, eats out 3 times a week, shops once a week, drives and performs household chores including laundry and sweeping/vacuuming a little at a time.

(Tr. at 20-21.) As indicated previously, the RFC included a limitation that Plaintiff "should be allowed to sit, stand or walk alternatively, provided that they [sic] are off task less than 10% of the work period." (*Id.* at 16.) After examining the record and the applicable law, the court agrees with Plaintiff that the RFC is deficient for failing to specify the frequency of the needed position changes.

A 1996 ruling by the Social Security Administration explains policies concerning the impact of an RFC that provides for less than a full range of sedentary work. Among other things, it explains that the ability to do a limited range of sedentary work does not in itself establish disability, but requires an individualized determination, including an assessment of the extent of the individual's limitations and the extent of the erosion of the occupational base. *Titles II & XVI: Determining Capability to Do Other Work-Implications of A Residual Functional Capacity for Less Than A Full Range of Sedentary Work*, SSR 96-9P, 1996 WL 374185, *4-5 (S.S.A. July 2, 1996).[3] The ruling provides in part:

> An accurate accounting of an individual's abilities, limitations, and restrictions is necessary to determine the extent of erosion of the occupational base, the types of sedentary occupations an individual might still be able to do, and whether it will be necessary to make use of a vocational resource. The RFC assessment must be sufficiently complete to allow an adjudicator to make an informed judgment regarding these issues.
>
> * * *
>
> **Alternate sitting and standing**: An individual may need to alternate the required sitting of sedentary work by standing (and, possibly, walking) periodically. Where this need cannot be accommodated by scheduled breaks and a lunch period, the occupational base for a full range of unskilled sedentary work will be eroded. The extent of the erosion will depend on the facts in the case record, such as the frequency of the need to alternate sitting and standing and the length of time needed to stand. The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing. It may be especially useful in these situations to consult a vocational resource in order to determine whether the individual is able to make an adjustment to other work.
>
> * * *
>
> When the extent of erosion of the unskilled sedentary occupational base is not clear, the adjudicator may consult various authoritative written resources, such as the DOT, the SCO, the Occupational Outlook Handbook, or County Business Patterns.
>
> In more complex cases, the adjudicator may use the resources of a vocational specialist or vocational expert. [footnote omitted] The vocational resource may be

---

[3] Social Security Rulings "are binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy and interpretation that [the agency has] adopted." 20 C.F.R. § 402.35.

asked to provide any or all of the following: An analysis of the impact of the RFC upon the full range of sedentary work, which the adjudicator may consider in determining the extent of the erosion of the occupational base, examples of occupations the individual may be able to perform, and citations of the existence and number of jobs in such occupations in the national economy.

*Id*. at *7-10.

A 1983 ruling touched on the same issue, stating in part:

**1. Alternate Sitting and Standing**

In some disability claims, the medical facts lead to an assessment of RFC which is compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting and standing. The individual may be able to sit for a time, but must then get up and stand or walk for awhile before returning to sitting. Such an individual is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work (and for the relatively few light jobs which are performed primarily in a seated position) or the prolonged standing or walking contemplated for most light work. (Persons who can adjust to any need to vary sitting and standing by doing so at breaks, lunch periods, etc., would still be able to perform a defined range of work.)

There are some jobs in the national economy--typically professional and managerial ones--in which a person can sit or stand with a degree of choice. If an individual had such a job and is still capable of performing it, or is capable of transferring work skills to such jobs, he or she would not be found disabled. However, most jobs have ongoing work processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task. Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will. In cases of unusual limitation of ability to sit or stand, a VS should be consulted to clarify the implications for the occupational base.

*Titles II & XVI: Capability to Do Other Work-The Medical-Vocational Rules As A Framework for Evaluating Exertional Limitations Within A Range of Work or Between Ranges of Work*, SSR 83-12, 1983 WL 31253, *4 (S.S.A. 1983).

The Tenth Circuit has recognized that an ALJ "must be specific as to the frequency of the individual's need to alternate sitting and standing." *Jimison ex rel. Sims v. Colvin*, 513 F. App'x 789, 792 (10th Cir. 2013) (quoting SSR 96–9p, 1996 WL 374185, at *7 (July 2, 1996)). Clearly, if some sedentary jobs can only be performed from a sitting position, the need of an individual to

7

frequently shift to a standing position could prevent that individual from performing such jobs. As SSR 96-9p indicates, such a limitation can erode the occupational base for sedentary work and therefore requires examination of "the frequency of the need to alternate sitting and standing and the length of time needed to stand." SSR 96-9p, 1996 WL 374185 at *7. The RFC in the instant case does not specify the frequency with which Plaintiff needs to alternate positions. Nor was the frequency specified in the ALJ's hypotheticals to the vocational expert or reflected in the vocational expert's testimony.

The Commissioner notes that the RFC said Plaintiff could alternate positions provided she was not "off task more than [ten percent] of the work period," and argues this "presumes that she could shift positions as needed within that allowance." (Doc. 17 at 5.) In other words, the Commissioner argues, the RFC provided "an option to sit or stand at will." (Doc. 17 at 5.) The court recognizes that an option to sit, stand, or walk at will satisfies the requirement for specifying frequency in SSR 96-9p. *Jimison ex rel. Sims*, 513 F. App'x at 792 ("The option to sit or stand at will permits the claimant to control the frequency at which she alternates positions. No greater specificity would be possible.") But that is not what the RFC says. It does not state or imply that Plaintiff is allowed to alternate positions at will. The Commissioner's argument in fact proves the opposite: it argues Plaintiff could change positions "at will" but only "as needed within that allowance" – meaning as long as shifting positions did not put her off task a specified percentage of the time. That is not changing positions at will.

The Commissioner also points out that when the RFC was presented to the vocational expert, the expert identified jobs such a person could perform and did so "without asking for any clarification regarding the hypothetical." (Doc. 17 at 5-6.) The Commissioner suggests this shows that "[n]o greater specificity [as to frequency] was required (or even possible)." (*Id.* at 6) (citing

*Jimison ex rel. Sims* and *H.J. v. Saul,* No. 20-CV-1183-SAC, 2021 WL 876999 (D. Kan. Mar. 9, 2021)). This argument is not persuasive. SSR 96-9p requires an ALJ to convey to a vocational expert the frequency with which a person needs to alternate positions, and the Commissioner fails to explain why the ALJ could not have done so here. As Judge Crow noted in *H.J. v. Saul*, the purpose of this requirement "is to ensure that the limits placed upon the range of sedentary work by the ALJ are not too vague and are understood by the vocational expert and parties in the case." 2021 WL 876999, at *3. That purpose was satisfied in *H.J. v. Saul* because although the ALJ offered a hypothetical essentially identical to the one used in this case, the vocational expert's answer expressly assumed a frequency, stating that certain jobs would be available that are "generally performed … alternating positions once or twice an hour … for comfort." *Id.* Because there was "an understanding supported in the record that plaintiff needed to alternate positions once or twice an hour, the court does not believe that the requirements of SSR 96-9p were violated by the ALJ." *Id.* Similarly, in *Jimison ex rel. Sims,* the vocational expert testified that she understood a hypothetical about performing sedentary work "either sitting down or standing up, whichever way she wanted," meant that the "sit/stand option [was] at will." *Jimison ex rel. Sims,* 513 F. App'x at 792. In light of this testimony and the ALJ's adoption of it, there was "no question" that the ALJ impliedly included an at will limitation in his findings. *Id. See also Wahpekeche v. Colvin,* 640 F. App'x 781, 785 (10th Cir. 2016) (testimony showed ALJ adopted requirement for an hourly change in position). By contrast, in *Verstraete v. Astrue*, No. 11-1404-SAC, 2013 WL 238193, *2 (D. Kan. Jan. 22, 2013), Judge Crow reversed an order denying benefits where an RFC included a limitation that the plaintiff needed to "alternate position periodically for comfort." He noted Tenth Circuit and District of Kansas cases that "have clearly and consistently indicated … that the RFC assessment must be specific as to the frequency of the

individual's need to alternate sitting and standing…." *Id.* at *5. *See also id.* at *4-5 (citing Tenth Circuit cases reversing for failure to be more specific than "change positions from time to time" or allowing "brief changes in position.")

Specifying that a person needs to shift positions "at will" conveys the required information – it indicates the person may need to constantly shift positions. *Jimison ex rel. Sims,* 513 F. App'x at 792 ("at will" permits the claimant to control the frequency). A vocational expert can take that information and determine whether there are jobs that can be performed with such a limitation. But specifying that a person can alternate positions if they are not off task more than ten percent of the time does not convey how often a person needs to shift positions. It suggests the vocational expert can "reverse engineer" the need for position changes by identifying jobs that allow a person to be off task less than ten percent of the time. In any event, it does not comply with the requirement of SSR 96-9p that the RFC must specify the frequency with which the claimant needs to alternate between sitting, standing, or walking. That failure requires a remand, as it undermines the reliability of vocational expert testimony that was not predicated upon Plaintiff's specific limitations. *See Maynard v. Astrue,* 276 F. App'x 726, 731 (10th Cir. 2007) ("The ALJ's hypothetical does not comply with [SSR 96-9p] … because it provided no specifics to the VE concerning the frequency of any need Mr. Maynard may have to alternate sitting and standing and the length of time needed to stand. The RFC in the ALJ's hypothetical is therefore flawed as it pertains to a sit-stand option, and the VE's response is not a reliable basis for analyzing the erosion of the unskilled sedentary occupational base or the total number of jobs Mr. Maynard can perform….")

The case must be remanded so the ALJ can address the frequency with which Plaintiff needs to alternate positions and hear additional evidence. In view of this finding, the court does

not address Plaintiff's additional argument, as it may be rendered moot by the ALJ's additional findings. Nothing in this opinion is intended to suggest any particular outcome with respect to Plaintiff's application.

**IV. Conclusion**

The decision of the Commissioner is REVERSED and REMANDED. The case is remanded pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings in accordance with this Memorandum and Order. The clerk is directed to enter judgment in accordance with this order.

_____s / John W. Broomes_____
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE